# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **VERBA MAE SANDERS,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | **Case No.: 7:22-cv-01446-ACA** |
| ] | |
| **WALKER COUNTY BOARD** ] | |
| **OF EDUCATION,** ] | |
| ] | |
| **Defendant.** ] | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Verba Mae Sanders, an African American woman, worked as a lunchroom worker for Defendant Walker County Board of Education (the "Board"). (Doc. 31-1 at 29). In May 2020, the Board chose not to rehire Ms. Sanders for the next school year. (Doc. 29-1 at 31). After hearing this news, Ms. Sanders unsuccessfully applied for more than twenty-five jobs with the Board. (Doc. 29-12 at 4–8; doc. 29-21 at 2–3). After two years of rejected applications, Ms. Sanders sued the Board asserting that the Board (1) discriminated against her while she was employed there, in violation of 42 U.S.C. § 1981 ("Count One") and the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1), 2000e-3(a) ("Count Three"); (2) discriminated against her by failing to hire her in violation of § 1981 ("Count

Two") and Title VII ("Count Four"); and (3) retaliated against her in violation of § 1981 ("Count Five") and Title VII ("Count Six"). (Doc. 16).

The Board moves for summary judgment against Ms. Sanders (Doc. 20). Having considered the briefing and evidence submitted by the parties, the court **WILL GRANT** the Board's motion and **WILL ENTER SUMMARY JUDGMENT** in favor of the Board and against Ms. Sanders on Counts One, Three, Five, and Six. But because Ms. Sanders presents a convincing mosaic of circumstantial evidence that creates a genuine issue of material fact for Counts Two and Four, the court **WILL DENY** the motion for summary judgment as to those counts.

## I.    BACKGROUND

When ruling on a motion for summary judgment, the court "view[s] the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve[s] all reasonable doubts about the facts in favor of the non-movant." *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022) (quotation marks omitted). Where the parties have presented evidence creating a dispute of fact, the court's description of the facts adopts the version most favorable to the non-movant. *See id.*; *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not even be what a jury at trial would, or will, determine

to be the facts.").Ms. Sanders worked for the Board as a lunchroom worker at Oakman Elementary School.. (Doc. 29-1 at 26–27; doc. 31-1 at 25). Suzanne Patton was her direct supervisor. (Doc. 29-1 at 34).

During her time working for the Board, Ms. Sanders was never written up (Doc. 29-3 at 79–80). Ms. Patton wrote that when Ms. Sanders started working, she was a "very good worker" and "she always got the food ready [for] the kids." (Doc. 29-4 at 1). By 2020, Ms. Sanders was the lunchroom cook, responsible for preparing "enough to feed every kid." (Doc. 29-1 at 37, 44).

In February of that year, the lunchroom ran out of tater tots. (*Id.* at 36). Ms. Patton called a meeting of the lunchroom staff which was made up of Ms. Sanders and three Caucasian workers who were not responsible for food preparation. (Id. at 36, 41, 44–45). At that meeting, Ms. Patton looked directly at Ms. Sanders and said that running out of tater tots "makes you look stupid and illiterate." (Doc. 29-1 at 43).

In addition to this specific incident, Ms. Sanders testifies that Ms. Patton spoke down to black employees and used an aggressive tone while being polite and accommodating to white employees. Additionally, a part time employee, Larissa Kirk, testified that Ms. Patton treated white employees more favorable than black employees. (Doc. 31-7 at 3). Neither Ms. Sanders nor Ms. Kirk provide any specific

3

examples of times when Ms. Patton or anyone else treated black employees different from white employees. (*See* Doc. 29-1 at 54–56; doc. 31-7 at 3).

Ms. Patton testified that Ms. Sanders initially performed her duties acceptably, but her attitude and performance changed. (Doc. 29-5 at 1). Ms. Patton alleges that Ms. Sanders began to argue with her when given instructions and frequently failed to follow instructions. *Id*. Ms. Sanders occasionally used leave or was absent without providing enough notice to allow Ms. Patton to arrange a substitute. *Id*. But Ms. Patton never complained to her superiors about the missed time. (Doc. 29-3 at 71–72). Ms. Sanders also attempted to have other employees switch duties with her despite instructions to perform specific duties. (Doc. 29-5 at 1–2). Finally, Ms. Sanders used her personal phone while at work despite instructions to only it during break periods. (*Id*. at 2).

Ms. Patton testified that she kept a logbook of issues from August 12, 2019 to March 4, 2020. (Docs. 29-6; 31-8). The logbook documented eight specific complaints Ms. Patton had with Ms. Sanders's performance, including a failure to timely notify Ms. Patton of taking leave, a bad attitude and failure to follow instructions, being late to work, taking off too much time, and using her phone at work. (Doc. 29-6 at 1–3, 6, Doc. 31-8). The logbook also contains two duplicative entries: one on February 7, 2020 and the other on March 4, 2020. (*See* doc. 31-8 at 5–6). Ms. Patton could not explain why she included those two entries twice. (Doc.

29-3 at 74–78). Ms. Sanders's misconduct was also documented in Ms. Patton's signed and handwritten statement and Ms. Patton's handwritten notes. (Docs. 29-4, 29-5).

It is undisputed that Ms. Patton never wrote Ms. Sanders up for any of the issues she noted in her logbook. (*See* doc. 32 at 6 ¶¶ 11, 12, 14). It is further undisputed that lunchroom employee evaluations were performed annually, but there are no evaluations in Ms. Sanders's personnel file and Ms. Patton could not locate any performance reviews. (*Id*. at 16–17 ¶ 5; Doc. 29-5 at 2). Ms. Patton nevertheless shared these complaints with Janell Aultman, the Child Nutrition Program Director for the Walker County Schools.

Ms. Patton makes employee recommendations to Ms. Aultman, who is the Child Nutrition Program Director for the Walker County Schools. (*See* doc. 29-3 at 48; doc. 29-8 at 1). Ms. Patton recommended not rehiring Ms. Sanders. (Doc. 29-3 at 48). Based on Ms. Patton's comments and her own independent assessment of the circumstances, Ms. Aultman recommended that the superintendent not rehire Ms. Sanders. (Doc. 29-8 at 2).[1] The Superintendent recommended to the Board that

---

[1]    Ms. Sanders challenges the admissibility of Ms. Aultman's Affidavit on the ground that she lacks personal knowledge of the matter to which she attests because someone else drafted the affidavit for her.  (Doc. 32 at 25); *see* Fed. R. Civ. P. 56 (a)(4). Ms. Aultman testified that she spoke with someone who drafted the affidavit for her. (Doc. 29-7 at 31–32). The fact that someone else wrote down what she said in no way indicates that she lacks personal knowledge.

Ms. Sanders not be rehired, and in May 2020, the Board notified Ms. Sanders of its decision not to rehire her. (Doc. 31-1 at 27).

That month, Ms. Sanders began applying for other job offerings posted by the Board. (Doc. 29-1 at 57). Ms. Sanders applied for 23 jobs with the Board between her termination in 2020 and when she filed her complaint in 2022.[2] (Docs. 29-12 at 4–8; 30 at 16-29). Of the relevant job openings, fourteen were for special needs paraprofessional positions, two were for lunchroom worker positions, one was for an instructional assistant position, one was for the Childhood Nutritional Program ("CNP"), and one does not have a description. (*Id*.). Ms. Sanders was not hired for any of these positions. (*Id*.).

On August 31, 2020, after the first seven applications were rejected, Ms. Sanders filed a charge with the Equal Employment Opportunity Commission alleging that the Board rejected her from these positions because of her race. (Doc. 16-1). The EEOC declined to proceed further on both charges filed by Ms. Sanders and issued two rights to sue. (Doc. 16-2; doc. 16-4). Ms. Sanders's applications to job openings at the Board were rejected both before and between the dates when she pursued these charges. (*See* doc. 29-12 4–8; doc. 16-2; doc. 16-4). Ms. Sanders did

---

[2] Ms. Sanders' complaint does not allege discrimination with respect to the first 6 applications. (*Compare* doc. 30 at ¶¶ 22- 28 *with* Doc. 16).

not apply for any positions after filing the second charge. *See* doc. 29-12 ¶ 4; doc. 16-4).

## II.   DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362 (11th Cir. 2018) (quotation marks omitted).

Ms. Sanders makes six claims that her race caused an adverse employment action. The six claims fall into three categories: (1) termination (Counts One and Three), (2) failure to hire (Counts Two and Four); and (3) retaliation (Counts Five and Six). Because she brings all the claims under either Title VII or § 1981, the court uses the same analysis for each group of claims. *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023) ("[B]oth statutes require the same proof and analytical framework").

Before turning to the analysis, the court must address the framework under which these claims are analyzed. The Board argues that it is entitled to summary judgment on all claims on the ground that Ms. Sanders fails to meet the test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), because she cannot identify similarly situated comparators or establish a prima facie case of

discrimination or retaliation. (Doc. 30 at 31–43). But Ms. Sanders does not attempt to satisfy that test (doc. 32 at 24), and when deciding a motion for summary judgment, the court is not concerned with whether the facts satisfy a specific evidentiary framework. *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023), *cert. denied,* 145 S. Ct. 154 (2024). The court must only decide "whether there is enough evidence for a reasonable jury to conclude that the defendant intentionally discriminated against the plaintiff. *Id.* at 947.

1.    Termination Claims (Counts One and Three)

In Counts One and Three, Ms. Sanders claims that she was terminated because she was Black. (Doc. 16 at 12 ¶78). The Board contends that it terminated Ms. Sanders because of her poor attitude and performance and that the only incident Ms. Sanders identified does not show any racial animus. (Doc. 30 at 34–36). Ms. Sanders proffers the following evidence to support the inference that she was terminated because of her race: (1) Ms. Patton's comment that she looked stupid and illiterate when the cafeteria ran out of tater tots, (2) Ms. Sanders's and Ms. Kirk's general allegations Ms. Patton treated white lunchroom workers better than black lunchroom workers, and (3) the absence of discipline, negative performance reviews, and the opportunity to correct bad behavior. (Doc. 32 at 28).

Ms. Sanders maintains that the absence of discipline, negative performance reviews and the lack of any opportunity to correct bad behavior casts sufficient doubt

on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered reasons were pretextual. The court agrees. But pretext alone does not establish a violation of Title VII or § 1981. To survive summary judgment, must provide sufficient evidence from which a reasonable juror could conclude that the real reason for her termination was her race. *McCreight v. AuburnBank*, 117 F.4th 1322, 1335 (11th Cir. 2024) (citing *Tynes*, 88 F.4th at 945) ("[i] n other words, the pretext prong of *McDonnell Douglas* is just the ordinary summary judgment standard)).

To establish that inference that race was the real reason for Ms. Sanders's termination, Ms. Sanders relies on the tater tot incident and both her and Ms. Kirk's testimony regarding Ms. Patton's preferential treatment of white lunchroom. The court is not convinced.

Ms. Patton's comment to Ms. Sanders after the lunchroom ran out of tater tots is rude, not racist. The comment attempts to malign Ms. Sanders's intelligence, not her protected class and therefore falls outside of Title VII and § 1981. *See Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1302 (11th Cir. 2007). And neither Ms. Sanders' nor Ms. Kirk's testimony provides examples of how Ms. Patton would treat black employees differently than their white counterparts. *McCreight v. AuburnBank*, 117 F.4th 1322, 1338 (11th Cir. 2024) (evidence that she and another black employee felt discriminated against is conclusory and cannot establish

evidence to convince a jury that she faced discrimination); *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018) ("[C]onclusory allegations without specific supporting facts have no probative value").

Moreover, Ms. Sanders failed to refute Ms. Patton's testimony that she provided verbal instruction (doc. 29-3 at 29-31), or the substance of the performance issues noted in Ms. Patton's logbook. And Ms. Sanders does not acknowledge Ms. Aultman's own assessment of the circumstances, which served as part of the reason she recommended against rehiring Ms. Sanders. (Doc. 29-8 at 2). Instead, she attempts to cast doubt on the truth of Ms. Patton and Ms. Aultman's testimony by pointing at the lack of corroborating evidence of disciplinary write-ups and the fact that Ms. Patton's notes contain two duplicative entries. (Doc. 32 at 27–28). But she does not provide any evidence—including her own testimony—showing that she received good performance reviews, nor did she testify that she had no disciplinary issues. And although the duplicative entries are odd, they are insufficient to allow a jury to find that the Board, through Ms. Patton, created the notes after the fact to justify a discriminatory termination.

After considering all of Ms. Sanders's evidence the court finds that it does not establish a reasonable basis for inferring that the Board discriminated against her because of her race when it did not renew her employment. *See Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1341–42 (11th Cir. 2023).

Accordingly, the court **WILL GRANT** the Board's motion for summary judgment with respect to Counts One and Three.

    2.    <u>Failure-to-Hire Claims (Counts Two and Four)</u>

Ms. Sanders asserts claims of discriminatory failure to hire under Title VII and § 1981. (Doc. 16 at 13–17, 20–23). The Board argues that it is entitled to summary judgment on these claims for two reasons: (1) Ms. Sanders cannot establish that the Board filled those positions with people outside her protected class, and (2) even if Ms. Sanders can make out a *prima facie* case of discriminatory failure to hire, the Board has shown legitimate non-discriminatory reasons for hiring other candidates. (Doc. 30 at 36–38).

The Board is correct that Ms. Sanders cannot establish that Board filled the positions with people outside of her protected class for four of the relevant job openings. (*See* Doc. 30 at ¶¶ 30, 34, 40, 41). Accordingly, the court **WILL GRANT** summary judgment as to hiring decisions.

The Board is also correct that it has offered legitimate, non-discriminatory reasons for hiring other candidates for the 12 other job openings. (*See generally* Doc. 30 at ¶¶ 29, 32, 33, 36, 40, 42, 43, 44, 46, 47, 48, 50). But Ms. Sanders disputes that the Board's reasons are legitimate and presents circumstantial evidence to establish that the Board's reasons were pretextual. (Doc. 32 at ¶¶ 29, 32, 33, 36, 40, 42, 43, 44, 46, 47, 48, 50).

Globally, Ms. Sanders disputes that the other applicants were more qualified for the lunch worker or special education paraprofessional jobs than her and presents evidence in support. (Doc. 32 at 29). And she points to undisputed evidence that the Board and its staff were comprised of only Whites individuals and that Ms. Aultman could review lunchroom job applications and would have been able to view any of her applications. (Doc. 32 at 29, 32). Because there is no evidence that Ms. Aultman reviewed her applications and Ms. Aultman testified that she did not direct anyone not to hire Ms. Sanders for any job for which she applied (doc. 29-7 at 40), the court does not consider her ability to see Ms. Sanders applications as circumstantial evidence of pretext.

Specifically, Ms. Sanders also presents evidence of at least two employees – Ms. Courington and Ms. Miller who were rehired based on prior relevant experience despite being nonrenewed for disciplinary reasons such as a failure to "follow the rules" and being "difficult." (Doc. 29-51 at 27–30, 40–42). Ms. Sanders also showed that other candidates were given paraprofessional positions without first meeting the limited testing requirements of the position because "we got to have somebody work with the students." (Doc. 29-14 at 137–38 (describing the requirements); *see* doc. 29-51 at 14).

Taken together this evidence is sufficient for a reasonable jury to find that the Board intentionally discriminated against Ms. Sanders. Therefore, the court **WILL DENY** the Board's motion for summary judgment on these twelve job openings.

Ms. Sanders has also presented evidence of six jobs about which she complains that the Board hired a white candidate and did not provide evidence of a legitimate, non-discriminatory reason for selecting the White candidate. (*See* Doc. 32 at ¶¶ 33, 35, 37, 39, 44, 51). Federal Rule of Civil Procedure 56 requires that the parties support their factual positions with citations to evidence or show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence support the fact." *See* Fed. R. Civ. P. 56(c)(3). The Board's failure to do so means it has failed to carry its initial burden on summary judgment. *See Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1335 (11th Cir. 2024). Therefore, the Court **WILL DENY** the Board's motion for summary judgment on those hiring decisions.

### 3.    Retaliation Claims (Counts Five and Six)

In Counts Five and Six, Ms. Sanders claims that the Board retaliated against her by "fail[ing] to hire or re-hire her" because she filed an EEOC charge. (Doc. 16 ¶¶ 160–172). Ms. Sanders alleges that she applied for seven positions in May and July 2020, filed an EEOC charge on August 31, 2020, and then began applying again in February 2021. (Id. at 27–58). To prove retaliation using a convincing mosaic,

Ms. Sanders must provide enough evidence to "allow a reasonable jury to infer but-for causation." *Yelling*, 82 F.4th at 1342. Ms. Sanders contends that the "record reflects other circumstantial evidence that points to retaliation" (doc. 32 at 32) but does not cite any of that evidence. Accordingly, the court is limited to evidence of temporal evidence.

Because Ms. Sanders relies solely on temporal proximity, that proximity must be "[v]ery close" to create an inference of causation. *Berry*, 84 F.4th at 1309; *see also Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007) ("[M]ere temporal proximity, without more, must be very close.") (quotation marks omitted). The Board contends that Ms. Sanders's retaliation claims cannot survive summary judgment because five months elapsed between the August 31, 2020 EEOC charge and her next job application in February 2021. (Doc. 30 at 40). Ms. Sanders counters that an inference of causation exists because the Board took the first opportunity to retaliate after the filing of the charge because she did not apply for another job until February 2021. (Doc. 32 at 32–33).

In the absence of any other evidence, Ms. Sanders's argument is not convincing enough to survive summary judgment. The Board proffered evidence that it's decision not to hire Ms. Sanders predates her EEOC filing; Ms. Sanders applied for six other jobs she applied for *before* she filed her EEOC complaint. (see Doc. 30 at ¶¶ 22-28). After her EEOC claim, the Board continued to hire other

applicants for all other positions to which she applied and proffered undisputed evidence of legitimate, nonretaliatory reasons for the hiring decisions in all but 8[3] of those 19 hires. For those eight, the *only* evidence Ms. Sanders proffers to support her retaliation claim is the fact she filed a claim with the EEOC. Notably, five of those hiring decisions came over a year after the EEOC claim.

On the remaining 11 hiring decisions, Ms. Sanders contends that some of those articulated reasons are not what actually motivated the Board to hire the other applicant (*see e.g.,* doc. 32 at ¶¶ 32, 33, 36, 40, 42, 43, 44, 46, 47, 48, 50) but that is not the Board's burden. *Yelling,* 82. F.4th at 1340. Moreover, because the Board satisfied its burden, the burden shifted to Ms. Sanders to "evidence sufficient to allow a reasonable inference of pretext and that her protected conduct was a but-for cause." *Id.* at 1341. Vincent v. Jefferson Cnty. Bd. of Educ., No. 23-12417, 2025 WL 2713927, at *12 (11th Cir. Sept. 24, 2025). Ms. Sanders made no attempt to satisfy that burden.

Accordingly, the court **WILL GRANT** the Board's motion for summary judgment on Counts Five and Six.

### III.    CONCLUSION

---

[3] The Board did not cite any evidentiary support for its contention that Ms. Sanders was not hired based on a more favorable interview with the applicant. For this reason, the court does not consider that the interview was more favorable.

The court **WILL GRANT** the Board's motion for summary judgment on Counts One, Three, Five, and Six, and the court **WILL ENTER SUMMARY JUDGMENT** in favor of the Board and against Ms. Sanders on those claims. The court **WILL GRANT IN PART AND DENY IN PART** the Board's motion for summary judgment for Counts Two and Four. The court will grant Board's motion for summary judgment for Counts Two and Four as to the hiring decisions made for the positions set out in Doc. 30 at ¶¶ 30, 34, 40, 41. The court will deny the Board's motion for all remaining hiring decisions.

**DONE** and **ORDERED** this September 30, 2025.

_____
**ANNEMARIE CARNEY AXON**
**UNITED STATES DISTRICT JUDGE**